**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY GIBSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19-cv-02892-JD<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:          December 19, 2019<br>Time:          10:00 a.m.<br>Courtroom:   11<br>Judge:        Hon. James Donato |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................... 1

II.   PLAINTIFF'S FACTS ........................................................................................... 2

    A.  Emissions Warranty Coverage for High-Priced Parts ............................. 2

    B.  Plaintiff's Vehicle Repairs .................................................................... 3

III.  THE FIRST AMENDED COMPLAINT SATISFIES RULE 9(b) ................................. 4

    A.  Rule 9(b)'s Pleading Standard ............................................................... 4

    B.  The In-tank Fuel Pump ......................................................................... 6

    C.  JLRNA's Knowledge ............................................................................ 9

IV.   DEFENDANT'S ARGUMENT ABOUT CARB MISSES THE POINT ....................... 10

V.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A VIOLATION OF THE UCL ......... 10

VI.   PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR EQUITABLE
      RELIEF ................................................................................................................ 14

VII.  CONCLUSION ................................................................................................... 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007).........................................................................................9, 11

6
7

*Brickman v. Fitbit, Inc.*,
    No. 3:15-cv-02077-JD, 2017 U.S. Dist. LEXIS 202568 (N.D. Cal. Dec. 8,
    2017)..............................................................................................................................12

8
9

*Camacho v. Auto.*
    *e Club of S. Cal.,* 142 Cal. App. 4th 1394 (2006) .............................................................13

10
11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)......................................................................................................10

12
13

*Choi v. Kimberly-Clark Worldwide, Inc.*,
    No. SA CV 19-0468-DOC, 2019 U.S. Dist. LEXIS 175623 (C.D. Cal. Aug.
    28, 2019)...........................................................................................................................13

14
15

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995).............................................................................................6

16

*Daugherty v. Am. Honda Motor Co.*
    144 Cal. App. 4th 824 (2006)..........................................................................................11

17
18

*Garrison v. Whole Foods Mkt. Group, Inc.*,
    No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) .................12

19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)......................................................................................................11

20
21

*Linear Tech. Corp. v. Applied Materials, Inc.*
    152 Cal. App. 4th 115 (2007)...........................................................................................13

22
23

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989)..........................................................................................5, 6

24
25

*Myrette-Crosley v. Ditech Home Loans*,
    No. 17-cv-05528-JD, 2018 U.S. Dist. LEXIS 108610 (N.D. Cal. June 28,
    2018)................................................................................................................................4

26
27

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
    223 Cal. App. 4th 1105 (2014).........................................................................................10

28

*Rubio v. Capital One Bank,*
    613 F.3d 1195 (9th Cir.2010) ............................................................................. 10

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
    72 Cal. App. 4th 861 (1999) ................................................................................. 13

*United States v. Corinthian Colls.,*
    655 F.3d 984 (9th Cir. 2011) ................................................................................. 9

*United States v. United Healthcare Ins. Co.,*
    848 F.3d 1161 (9th Cir. 2016) ............................................................................... 5

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 10

California Code of Regulations ("CCR") ............................................................. *passim*

California's Unfair Competition Law .................................................................... *passim*

Consumers Legal Remedies Act ........................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8(a) ..................................................................................................... 2

Fed. R. Civ. P. 9(b) .......................................................................................... 2, 4, 5, 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff's claims are straightforward and sufficiently pled.  Plaintiff alleges that Defendant Jaguar Land Rover North America ("JLRNA") has inaccurately self-selected the parts that JLRNA has determined should be classified as "high-priced emissions warranted parts" under California's Emission Control System Warranty requirements.  In so doing, JLRNA has unilaterally *limited the parts that should be covered* under the California Emissions Warranty for 7-years and 70,000 miles, including the part specifically identified by Plaintiff, in order to minimize its warranty exposure.  By not comprehensively identifying *all* of the parts that should be included as "high-priced" warranted parts, JLRNA is able to limit the warranty coverage for those parts to only 4-years and 50,000 miles.

Plaintiff's theory does not depend on the premise that the California Air Resources Board ("CARB") was deceived by the information that JLRNA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for JLRNA's inaccuracy.  JLRNA alone is responsible for selecting and identifying to CARB the parts that JLRNA has unilaterally identified as "high-priced emissions warranted parts" as part of its application for vehicle certification.  The list of high-priced emissions parts identified by JLRNA may be correct.  But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience. Defendant's conduct constitutes an unfair and unlawful business practice in violation of California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").

Predictably, JLRNA denies wrongdoing and contends that Plaintiff has not provided sufficient detail in support of his claims.  However, Plaintiff's First Amended Complaint ("FAC") sufficiently identifies at least one part - the in-tank fuel pump - that he contends should have been covered for 7-years or 70,000 miles, why that part should have been identified by JLRNA as a high-priced emissions warranted part, and that it was not.  At the pleading stage, Plaintiff is not required to identify how much the in-tank fuel pump was estimated to have cost in 2013, the cost inputs that JLRNA used in 2013 to calculate the cost limits for the part, or any other information that is exclusively within JLRNA's possession.  Moreover, Plaintiff specifically asked JLRNA for this information in his CLRA letter *prior to initiating this action*,

1  and JLRNA refused to provide it.  JLRNA should not now be entitled to use that information as

2  a sword and a shield by arguing that Plaintiff's claims fail if he cannot provide the information

3  that JLRNA itself has refused to provide.

4       In sum, Plaintiff has sufficiently alleged that the in-tank fuel pump in the 2013 Land

5  Rover LR4 was as a "high-priced emissions warranted part" entitled to the longer 7-year

6  70,000-mile warranty period and that JLRNA failed to include this part in its list of high-priced

7  emissions parts provided to all Class members.  Plaintiff has satisfied Rule 9(b) by alleging with

8  sufficient particularity the who, what, when, where, and how of JLRNA's fraud and has

9  satisfied Rule 8(a) by setting forth sufficient facts to establish that Plaintiff's theory of JLRNA's

10  deception is entirely plausible (a theory that JLRNA has failed to rebut).  Whether or not

11  Plaintiff can prevail on his theory is an issue exclusively reserved for the trier of fact.

12       Defendant's Motion to Dismiss should be denied.

13  **II.    PLAINTIFF'S FACTS**

14       Plaintiff purchased a new 2013 Land Rover LR4 in 2013 (the "Gibson Vehicle").   FAC,

15  ¶ 32.  The vehicle was covered under JLRNA's new car warranty, as well as the emissions

16  warranties as set forth by the California Code of Regulations ("CCR"), including California's

17  emissions warranty, which provides that high-priced warranted parts are covered for 7-years or

18  70,000 miles.  *Id.*, ¶ 33.

19       **A.    Emissions Warranty Coverage for High-Priced Parts**

20       Under the CCR, any part that either affects a vehicle's emissions, or causes a vehicle's

21  on-board diagnostic malfunction indicator light to illuminate is, for the purpose of determining

22  coverage under the CCR, considered a "warranted emissions part," which has a 3-year, 50,000-

23  mile warranty.  *Id.*, ¶ 11.  However, if the part is a "high-priced" warranted part, as defined by §

24  2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of

25  replacing the part shall have a 7-year 70,000-mile emissions warranty. *Id.*, ¶ 12.

26       CCR Section 2037(c) describes how to identify a "high-priced" warranted part.  It is

27  based on a formula for replacing the part at the time of certification, using a cost limit multiplied

28  by a consumer price index.  CCR section 2037(c)(1)(B) regarding "High-priced warranted

Parts" requires JLRNA to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)." *Id.*, ¶ 13.  Plaintiff is not challenging the CCR formula.

The CCR provides that the manufacturer must identify the "high-priced" parts that qualify for the extended 7-year 70,000-mile emissions warranty and provide 7-year 70,000-mile emissions warranty coverage.  Furthermore, manufacturers must also submit an application to CARB identifying the parts.  *Id.*, ¶ 10.  CARB then approves or disapproves the application, and the manufacturer then includes those approved parts as covered by its extended warranty coverage.  Independent of what is stated on the list, manufacturers also are required to provide the extended 7-year 70,000-mile emissions warranty to "high-priced" emissions parts.

**B.     Plaintiff's Vehicle Repairs**

On September 12, 2017, the Gibson Vehicle underwent repairs at a JLRNA-authorized dealership because his vehicle was stalling.  *Id.*, ¶ 34.  The JLRNA-authorized dealership was unable to duplicate the stalling complaint during the test drive but determined that the vehicle had fault codes stored in the system for low fuel pressure.  *Id.*, ¶ 35.  The dealership installed a new fuel pump driver module and new low fuel pressure sensor.  *Id.*  The cost of the labor associated with the repairs was $834.00, and the total cost of repairs was $1,236.78.  *Id.*, ¶ 36. Plaintiff paid for those repairs out of pocket. *Id.*

On October 4, 2017, the Gibson Vehicle again underwent repairs at the same dealership because the vehicle continued to stall.  *Id.*, ¶ 37.  The dealership found that the low-pressure fuel pump was intermittently failing on the secondary circuit side, causing the pump to cease working while driving. *Id.*  A new low-pressure fuel pump, gasket, and relay were installed. *Id.*

The cost of the labor associated with the repairs was $695.00, and the total cost of the repairs was $1,249.20.  Plaintiff again paid for those repairs out of pocket.  *Id.*, ¶ 38.

The cost associated with the diagnosis and repairs relating to the in-tank fuel pump should have been covered and paid for by JLRNA under the 7-year 70,000-mile California emissions warranty because, pursuant to California Code of Regulations section 2037(c), the parts relating to those repairs should have been identified by JLRNA as high-priced warranted

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

parts, due to the costs associated with the parts and labor relating to diagnosing the failure and replacing the parts. *Id*., ¶ 39.

The reason that Plaintiff was charged for the repairs was not the result of an individual issue relating to the dealership or an oversight by the dealership in failing to identify the repairs as repairs that should have been covered under the 7-year, 70,000- mile California emissions warranty. *Id*., ¶ 49. Rather, Plaintiff was charged for those repairs because of JLRNA's uniform and systematic business practice of intentionally refusing to identify in the JLRNA warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced warranted parts under California law. *Id*.

JLRNA failed to identify all said components in order to reduce the amount of money that JLRNA spends on warranty-related repairs. If JLRNA complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then JLRNA dealerships would properly provide warranty coverage for said high-priced warranted parts. *Id*., ¶¶ 19, 51, and 89.

## III.   THE FIRST AMENDED COMPLAINT SATISFIES RULE 9(B)

### A.   Rule 9(b)'s Pleading Standard

The FAC satisfies the heightened pleading standards of Rule 9(b). As this Court has noted, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Myrette-Crosley v. Ditech Home Loans*, No. 17-cv-05528-JD, 2018 U.S. Dist. LEXIS 108610, at * 3 (N.D. Cal. June 28, 2018) (citing *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989)). Generally, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Similarly, this Court has noted that while "conclusory allegations with no 'particularized supporting detail' do not suffice," Rule 9(b) "does not require absolute particularity or a recital of the evidence." *Id*. (citing *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1180 (9th Cir. 2016)). "[A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise

method' used to carry out the fraud." *United Healthcare,* 848 F.3d at 1180 (citation omitted).

The FAC adequately alleges the who, what, when, where and how of JLRNA's alleged misconduct:

- **WHO** – JLRNA (FAC, ¶ 15);

- **WHAT** – Failure to identify to owners, lessees and dealerships all of the parts that should be identified as "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Priced Emissions-Related Parts Warranty (*Id.*, ¶¶ 1, 15, 48-49);

- **WHEN** – At the time of sale or lease of Class Vehicles to Plaintiff and Class members (*Id.*);

- **WHERE** – In the JLRNA Passport to Service warranty booklet (*Id.*, ¶¶ 15, 33, 48-49, 101); and,

- **HOW** – By unilaterally and inaccurately selecting the parts to be included as "high-priced" in order to reduce JLRNA's warranty exposure (*Id.*, ¶¶ 2, 18, 22, 46, 51, 89, 98, 102).

There can be little doubt that Plaintiff's allegations appropriately put JLRNA on notice of Plaintiff's claim, which is the overall purpose of the Rule 9(b) requirement. *See e.g.*, *Moore,* 885 F.2d at 540 ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer.")  As the FAC alleges:

> JLRNA has engaged in a systematic business practice of omitting from the JLRNA Passport to Service warranty booklet provided to owners and lessees at the time of sale or lease, and in resources provided by JLRNA to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Priced Emissions-Related Parts Warranty.  JLRNA classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty, but not all of the high-priced warranted parts that should be covered under the 7-year 70,000-mile California emissions warranty. Thereafter, when JLRNA vehicles are presented by consumers to JLRNA authorized repair facilities for repair, JLRNA fails to provide coverage under the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under the 7-year 70,000-mile California emissions warranty. As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by JLRNA. JLRNA engages in the alleged misconduct in order to reduce the amount of money that JLRNA has to pay out on warranty related repairs

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

and warranty claims.  If JLRNA properly identified all of the high-priced warranted parts that should be correctly identified as such, then JLRNA dealerships would properly provide coverage for said high-priced parts under warranty. The failure by JLRNA to properly identify parts as "high-priced" warranted parts under the CCR violates the UCL and CLRA and is intended to minimize the amount of money that JLRNA has to pay out in warranty claims.  This conduct violates California law.

*Id.*, ¶¶ 15-20.

## B.      The In-tank Fuel Pump

JLRNA also contends that the FAC fails to adequately allege that the in-tank fuel pump is a high-priced emissions component entitled to the 7-year 70,000-mile warranty.  Motion at 6. Not true.  Plaintiff has sufficiently alleged why the component qualifies as a "high-priced" part, namely, because the part had an individual replacement cost at the time of certification exceeding the cost limit defined in section 2037(c)(3).  FAC, ¶ 39.  As the FAC alleges, "[t]his is because, at the time of initial distribution, the cost associated with diagnosing the parts as being defective, purchasing the parts, and installing the parts, qualified the parts as high-priced emissions parts, as described in the statute."  *Id.*, ¶ 40.

Moreover, it is well-settled that Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore,* 885 F.2d at 540.   Rule 9(b) only requires "that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  In such cases, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore*, 885 F.2d at 540.  Here, the details of how JLRNA applied the CCR formula with respect to the in-tank fuel pump are exclusively within JLRNA's possession and are known only to JLRNA. Without the opportunity to conduct discovery, Plaintiff cannot reasonably be expected to have detailed personal knowledge of this information.

Any argument to the contrary is belied by JLRNA's own conduct.  Before filing this action, Plaintiff sent JLRNA a CLRA letter specifically asking JLRNA to explain how it determined that the in-tank fuel pump was not a high-priced part. FAC, ¶ 54.  JLRNA refused to provide the requested information, and still has not done so.  *Id.*, ¶¶ 55-56.  On February 27,

2019, in response to Plaintiff's CLRA letter, JLRNA's counsel sent a letter indicating, in essence, that JLRNA conducted an analysis at the time that JLRNA submitted the application for vehicle certification, determined that the in-tank fuel pump did not qualify as a high-priced emissions part covered under the 7-year 70,000-mile California emissions warranty, and that JLRNA shared its findings with CARB.  *Id*., ¶ 55.

In response, on March 9, 2019 counsel for Plaintiff wrote JLRNA's counsel stating, *"In order for me to determine if your letter is accurate, please provide me with documentation regarding the cost of the parts and labor relating to the parts at issue, and relating to the relevant time period." Id*., ¶ 56.  The request was made by Plaintiff's counsel in an effort to sincerely provide JLRNA with an opportunity to explain this situation, which appeared on its face to be a clear violation of CCR section 2037(c)(1)(B), and an opportunity to avoid potential litigation.  JLRNA's attorneys completely ignored the request.

It is unfair, if not disingenuous, for Defendant to now claim that Plaintiff should provide the information that JLRNA itself has refused to provide.  Interestingly, while JLRNA claims that Plaintiff's allegations are insufficient, JLRNA does not actually deny that the part identified by Plaintiff is incorrectly classified or that the in-tank fuel pump is, in fact, a high-priced warranted part entitled to extended 7-year 70,000-mile warranty coverage.  Moreover, conspicuously absent from JLRNA's Motion is any attempt to identify JLRNA's analysis of the relevant cost to diagnose, replace, or install the part which Plaintiff contends is a high-priced emissions part.

Finally, to the extent that further substantiation is required, it is provided in the FAC. The FAC explains that the in-tank fuel pump was identified in the MY ("Model Year") *2012* and MY *2016* Land Rover LR4 Passport to Service warranty books as a high-priced emissions part, but that the same exact part (which has the same exact part number, the same exact cost for labor, and the same exact replacement procedure) was *not* identified in the MY 2013 Land Rover LR4 Passport to Service as being a high-priced emissions part.  *Id*., ¶ 41.

Specifically, the FAC alleges that the repair procedure documents published by JLRNA and available to repair facilities indicate that the MY 2012 through MY 2016 Land Rover LR4

are equipped with the same in-tank fuel pump, currently identified as part number LR043385. *Id.*, ¶ 41.  The labor time indicated in the repair procedure documents published by JLRNA to replace the in-tank fuel pump for the MY 2012 through MY2016 Land Rover LR4 is exactly the same, 1.8 hours, plus the time and cost of draining the fuel tank.  *Id.*, ¶ 42.  Moreover, the MY *2012* Land Rover LR4 Passport to Service booklet provided to California consumers at the time that they purchased or leased MY 2012 Land Rover LR4 vehicles *did* identify the in-tank fuel pump as a high-priced emissions part covered under the 7-year 70,000-mile California emissions warranty.  *Id.*, ¶ 43.  The identification in the MY 2012 Land Rover LR4 Passport to Service of this part as being a high-priced emissions part was the result of JLRNA analyzing the cost of the actual part, the labor cost of diagnosing the part as being defective, and the labor cost of replacing the part, which led JLRNA to conclude that the part was a high-priced emissions part.  *Id.*

Similarly, the MY *2016* Land Rover LR4 Passport to Service booklet given to California consumers again *did* identify the in-tank fuel pump as a high-priced part covered under the 7-year 70,000-mile California emissions warranty. *Id.*, ¶ 44.  For MY 2016 Land Rover LR4 vehicles, JLRNA chose to correctly identify the in-tank fuel pump as being a high-priced emissions part covered under the 7-year 70,000-mile California emissions warranty.  *Id.* However, the MY 2013 through MY 2015 Land Rover LR4 Passport to Service booklet provided to California consumers at the time that they purchased or leased MY 2013 through MY 2015 Land Rover LR4 vehicles *does not* identify the in-tank fuel pump as being covered under the 7-year 70,000-mile California emissions warranty, notwithstanding that it is the same part, with the same repair procedure, as the Model Year 2012 part.  *Id.*, ¶ 45.  Such allegations are more than sufficient to move Plaintiff's claims across the line from conceivable to plausible.

Plaintiff contends that JLRNA failed to include the in-tank fuel pump as a high-priced part for MY 2013 in an effort to limit JLRNA's warranty exposure and is just one example of JLRNA's scheme to fail to properly and comprehensively identify all of the parts that should be identified as high-priced warranted parts and covered for 7-years or 70,000 miles under the California emissions warranty. *Id.*, ¶ 46.  JLRNA argues that there could be other plausible

1  explanations yet fails to affirmatively identify one.  Motion at 8-9.  Even assuming *arguendo*

2  there may be a plausible, legitimate explanation for JLRNA's failure to include the in-tank fuel

3  pump as a high-priced part for MY 2013, that is an issue exclusively reserved for the trier of

4  fact's determination.

5  **C.    JLRNA's Knowledge**

6  Distinct from common law fraud, a claim under the UCL's fraudulent prong requires

7  only a showing that "members of the public are likely to be deceived" and does not require

8  knowledge or intent.  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556

9  (2007).  As the FAC states, "[s]aid conduct is likely to deceive an ordinary consumer, as

10  JLRNA concealed from consumers and from JLRNA's dealerships all of the high-priced

11  warranted parts, in an effort by JLRNA to minimize the amount of money that JLRNA has to

12  pay out in warranty claims."  FAC, ¶ 100.  "One of the ways JLRNA misleads consumers

13  relates to the information that JLRNA provides to consumers in the Passport to Service."  *Id*.

14  "JLRNA intentionally omits information from the Passport to Service by intentionally failing to

15  classify all of the high-priced warranted parts as parts that should be covered under the 7-year

16  70,000-mile California emissions warranty."  *Id*.  Similarly, scienter is not required with respect

17  to the unfair and unlawful prongs.

18  With respect to Defendant's knowledge under the CLRA, "[M]alice, intent, knowledge,

19  and other conditions of a person[']s mind, including scienter, can be alleged generally." *United

20  States v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) (internal quotations omitted).

21  Plaintiff adequately alleges that JLRNA was well aware of the CCR requirements and purports

22  to comply with them, as JLRNA purportedly identified some, but not all parts, entitled to the

23  extended emissions warranty coverage, and that JLRNA chose to unilaterally limit the parts

24  covered under the extended emissions warranty.  FAC, ¶¶ 2, 22.  JLRNA's own Motion

25  confirms repeatedly that JLRNA was well-aware of the regulatory requirements and claims to

26  have satisfied them.  Motion at 3-4.  The FAC further alleges that JLRNA correctly identified

27  the in-tank fuel pump as a high-priced warranted part for the 2012 and 2016 model vehicles but

28  not for model year 2013 vehicles. *Id*., ¶ 41.

## IV.    DEFENDANT'S ARGUMENT ABOUT CARB MISSES THE POINT

JLRNA also contends that Plaintiff's claim has no merit because the California Air Resources Board did not identify a problem with JLRNA's high-priced warranted parts list. Motion at 10-11.  JLRNA conveniently misses the point.

Plaintiff is not challenging what the emissions warranty *does* cover or what CARB *did* review.  FAC, ¶ 22.  The gravamen of Plaintiff's claim is that the JLRNA's high-priced emissions warranty does not identify *all of the parts that should be covered* under the 7-year 70,000-mile emissions warranty.  CARB only reviews the emissions parts list that JLRNA actually submits to CARB.  Plaintiff contends that this list was incomplete.  Thus, it is no surprise that, according to JLRNA, CARB "was not even remotely troubled" (Motion at 11:7-8) by JLRNA's list of parts because JLRNA only showed CARB what it wanted CARB to see. CARB is not responsible for Defendant's misconduct.  JLRNA alone is responsible for selecting and identifying to CARB the parts that JLRNA has unilaterally and unlawfully identified as "high-priced emissions warranty parts" as part of its application for vehicle certification, and JLRNA failed to comprehensively identify those parts.

## V.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A VIOLATION OF THE UCL

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives [unlawful, unfair, or fraudulent] captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir.2010) (citations and internal quotations omitted). The UCL's coverage is broad, sweeping and embracing of anything that can be properly called a business practice and at the same time is forbidden by law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

"To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014) ("Unlawful practices are practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made.").  Plaintiff has sufficiently alleged a violation of the

1   unlawful prong because JLRNA's failure to designate the 2013 LR4's in-tank fuel pump as a

2   high-priced emissions warranted part, if proven true, would constitute a violation of CCR §

3   2037(c)(1)(B).  This section provides that "[e]ach [vehicle] manufacturer *shall* identify in its

4   application for certification [of] "high-priced" warranted parts which are…[f]or 2008 and

5   subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2)

6   above, and; [ii] have an individual replacement priced at the time of certification exceeding the

7   cost limit defined in section (c)(3)." CCR § 2037(c)(1)(B).

8           As support for Defendant's violations, Plaintiff alleges that JLRNA was required to

9   identify parts as "high-priced emissions parts" if those parts' replacement costs exceeded a

10   certain cost limit; that JLRNA "should have identified [the in-tank fuel pump] as being a high-

11   priced emissions part" because at the time of distribution, these parts qualified "as high-priced

12   emissions parts;" and, that in 2012 and 2016, JLRNA designated the Land Rover LR4's in-tank

13   fuel pump as a high-priced emissions part but that in 2013 JLRNA failed to designate the LR4's

14   in-tank fuel pump as a high-priced emissions part even though it was the same fuel pump used

15   in its 2012 and 2016 LR4 model vehicles.  FAC, ¶¶ 41-45.  Drawing all reasonable inferences in

16   favor of the non-moving party, Plaintiff has sufficiently alleged that JLRNA's failure to

17   designate its 2013 LR4 model's in-tank fuel pump as a high-priced emissions part was a

18   violation of CCR § 2037(c)(1)(B).

19           For similar reasons, Plaintiff has sufficiently alleged that JLRNA's conduct was

20   deceptive and fraudulent under the UCL.  Under the fraudulent prong, a plaintiff must allege

21   that the defendant had a duty to disclose the omitted or deceptive information, that plaintiff

22   relied on defendant's statement or omission, that "members of the public are likely to be

23   deceived" by defendant's conduct; and that plaintiff was damaged as a result.  Claims under the

24   CLRA also are evaluated under the "reasonable consumer" test, and a plaintiff must show that

25   members of the public are likely to be deceived.  *See*, *e.g.*, *Berryman,* 152 Cal. App. 4th at

26   1556-57; *Daugherty v. Am. Honda Motor Co.* 144 Cal. App. 4th 824, 838 (2006); *In re Tobacco*

27   *II Cases,* 46 Cal. 4th 298, 326 (2009).  The Plaintiff has satisfied these pleading requirements.

28

First, Plaintiff alleges that "JLRNA is and was under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year 70,000-mile California emissions warranty[.]" FAC, ¶ 103. Second, Plaintiff alleges that JLRNA's failure to disclose that the in-tank fuel pump was covered under the 7-year 70,000-mile warranty was "likely to deceive an ordinary consumer . . . in an effort by JLRNA to minimize the amount of money that JLRNA has to pay out in warranty claims" and that "JLRNA intentionally omits information from the Passport to Service by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year 70,000-mile California emissions warranty." *Id.*, ¶ 100.  Third, Plaintiff alleges that based on JLRNA's breach of its duty to disclose that the in-tank fuel pump was covered under the 7-year warranty, "Plaintiff justifiably relied on the information in the warranty booklet about the parts covered under the high-priced emissions warranty and was deceived and suffered damage as a result of JLRNA's intentional, wrongful and fraudulent conduct." *Id.*, ¶ 101.  The FAC also alleges that Plaintiff was damaged by paying out-of-pocket for a repair that should have been covered under warranty. *Id.*, ¶¶ 17, 36, 38, 53, and 92.

As numerous courts have noted, because whether under the UCL a reasonable consumer would likely be deceived by defendant's conduct is a factual question, not a legal one, such an inquiry is not appropriate for resolution at this stage of the litigation.  *See Garrison v. Whole Foods Mkt. Group, Inc*., No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271, at *6 (N.D. Cal. June 2, 2014) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)) ("Whether a reasonable consumer is likely to be deceived is a question of fact, and therefore typically not appropriate for resolution on a motion to dismiss."); *see also Brickman v. Fitbit, Inc.*, No. 3:15-cv-02077-JD, 2017 U.S. Dist. LEXIS 202568,  at *13 (N.D. Cal. Dec. 8, 2017) (ruling that whether members of the public are likely to be deceived by defendant's representations is not a question amenable to resolution on summary judgment).

JLRNA's alleged conduct also is unfair, under any legal definition.  In consumer cases arising under the UCL, a business practice is "unfair" if: (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and

1   (3) the injury could not reasonably have been avoided by consumers themselves. *Camacho v.*

2   *Auto.e Club of S. Cal.,* 142 Cal. App. 4th 1394, 1403 (2006).  Alternatively, a business practice

3   can be "unfair" when "it offends an established public policy or when the practice is immoral,

4   unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v.*

5   *Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 864 (1999).  An act or practice also is

6   unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory

7   provisions.  *See Choi v. Kimberly-Clark Worldwide, Inc.*, No. SA CV 19-0468-DOC (ADSx),

8   2019 U.S. Dist. LEXIS 175623, at **34-35 (C.D. Cal. Aug. 28, 2019).  Importantly, a finding of

9   "[w]hether a practice is . . . unfair is generally a question of fact which requires consideration

10  and weighing of evidence from both sides and which usually cannot be made [at the pleading

11  stage]." *Linear Tech. Corp. v. Applied Materials, Inc.* 152 Cal. App. 4th 115, 134–35 (2007)

12  (citations and internal quotations omitted).

13          The FAC sufficiently alleges that JLRNA's conduct is unfair under the foregoing

14  definitions. The failure on the part of JLRNA to properly identify all parts as high-priced

15  warranted parts that should be identified as such, is a uniform, systematic, and intentional

16  business practice on the part of JLRNA to minimize the amount of money that JLRNA has to

17  pay out in warranty claims.  FAC, ¶ 91.  JLRNA does this in an effort to reduce the amount of

18  money that JLRNA spends on warranty related repairs, knowing that it would be very difficult if

19  not impossible for most consumers to discover this unlawful conduct.  *Id*., ¶¶ 18, 51, 89, 91, and

20  102.  If JLRNA complied with California law and properly identified all parts as high-priced

21  warranted parts that should be identified as such, then JLRNA dealerships would properly

22  provide warranty coverage for said high-priced warranted parts.  *Id*., ¶¶ 19, 51, and 89.

23  JLRNA's conduct does not benefit consumers or competition.  *Id*., ¶ 93.  Plaintiff and members

24  of the Class could not reasonably avoid the injury each of them suffered or will suffer, which

25  injury is substantial.  *Id*.  JLRNA's conduct only benefits JLRNA, by JLRNA wrongfully

26  avoiding having to pay warranty claims which should be covered by the 7-year 70,000-mile

27  California emissions warranty.  *Id*.  JLRNA's conduct also offends established public policy that

28  is tethered to legislatively declared policies as set forth in the California laws and regulations

1  regarding California's Emission Control System Warranty Requirements, or is substantially

2  injurious to the public, for all of the reasons set forth above.  *Id.*, ¶ 95.

3  **VI.      PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR EQUITABLE
           RELIEF**

4

5          The UCL expressly provides for restitution and injunctive relief.  Plaintiff seeks

6  restitution under the UCL for Class members who paid out of pocket due to JLRNA's wrongful

7  conduct and seeks injunctive relief to compel JLRNA to correct its misconduct.  Since JLRNA

8  continues to refuse to provide 7-year 70,000-mile California emissions warranty coverage

9  relating to all repairs which should be covered under warranty pursuant to California law,

10 Plaintiff's FAC alleges that JLRNA's conduct presents a continuing threat which will persist

11 absent an award of appropriate injunctive relief under the UCL. *See* FAC, at ¶¶ 86, 97, 107.  In

12 connection with his CLRA claim, Plaintiff also seeks restitution and injunctive relief.  *Id.*, at ¶¶

13 114 and 116.  Nothing in either statute – and certainly nothing at the pleading stage – precludes

14 Plaintiff from seeking both reimbursement under the CLRA for out of pocket costs *already*

15 *incurred*, and an order requiring JLRNA to cover these costs of repair *in the future* under

16 warranty as a form of injunctive relief.

17         Moreover, it is well settled that a plaintiff is allowed to assert potentially inconsistent

18 theories of recovery at the pleading stage, and an evaluation of various remedies is better left for

19 dispositive motions and not a motion pursuant to Fed. R. Civ. P. 12(b)(6).

20 **VII.     CONCLUSION**

21         For the foregoing reasons, JLRNA's Motion should be denied in its entirety.

22 Dated: November 18, 2019                      Respectfully submitted,

23                                               **POMERANTZ LLP**
24                                               **THE LAW OFFICE OF ROBERT L. STARR**

25                                         By: _____

26                                               Jordan L. Lurie
                                                 Ari Y. Basser
27                                               Robert L. Starr
                                                 *Attorneys for Plaintiff*
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT